*737 Mi-. Justice GRIER,
dissenting.
I regret that I am compelled to dissent from the opinion of the majority of the court on all the points raised and decided in this case.
The first question in order is the jurisdiction of the court to entertain this bill in behalf of the State of Texas.
The original jurisdiction of this court can be invoked only by one of the United States. The Territories have no such right conferred on them by the Constitution, nor have the Indian tribes who are under the protection of the military ’authorities of the government.
Is Texas one of these United States? Or was she such, at' the time this bill was filed, or since?
This is to be decided'as a political fact, not as a, legal fiction. This court is bound to know and notice the public history of the nation.
If I regard the truth of history for the last eight years, I cannot discover the State of Texas as one of these United States. I do not think it necessary to notice any of the very astute arguments which have been advanced by the learned counsel in this ease, to find the definition of a State,.-when we have,the subject treated in a clear and common senSo manner by Chief Justice Marshall, in. the ease of Hepburn & Dundass v. Ellxey.* As the ease is short, I hope to be ex* cused for a full report of it, as stated and decided by the court. He says:
“ The question is, whether the plaintiffs, as residents of the District of Columbia, can maintain an action in the Circuit Court of the'United States for the-District of Virginia. This depends on the act of Congress, describing the jurisdiction of that court. The act gives jurisdiction to the Circuit Courts in , cases between a citizen of the State in which the suit is brought, and a citizen of-another State. To support the jurisdiction in this case, it must appear that Columbia is a State. On the part of the plaintiff, it has-been urged that Columbia is a distinct political society, and is, therefore, a ‘State’ according to the *738 definition of writers-on, general law. .This is true; but as the' act of Congress obviously uses' the word ‘State’ in reference to that term as used in the Constitution, it becomes-necessary to inquire whether Columbia is a State in the sense of that instrument. The result of that examination is a conviction that the members of the American Confederacy' only are the States eonr templated in the Constitution. The House of Representatives is to be composed of members chosen by the people of the seve.ral States, and 'each State shall have at least one representative: ‘ The.Senate of the United. States shall be composed of two senators from each State.’ 'Each‘State shall appoint, for the eloci\tibn of the executive, a number of electors, equal -to its whole number of senators and' representatives. These clauses’ show . ¿*.»t the word ‘ State’ is used in the Constitution aB designating a member of the Union, and excludes from the term the signification attached to it1 by writers on, the lawnf nations.”
Now we have here a clear and well-defined test by which we may arrive at a conclusion with regard to the questions • of fact now to be decided.
Is Texas a State, now represented by members chosen- by .-the people of that, State and received on the floor of 'Con.gress? Has she two senators to represent her as a State in , theBepate of the United States ? Has 'her voice been heard iu'the late election of President? Is she not now held and governed-as-a conquered province by military force ? The . act of-.Congress of'Mapch^d, 1867, declares Texas, to be a “reheLS'tate',” and provides for-its government until a legal an'd; republican State government could be legally established; ■It constituted Louisiana and Texas,the fifth military district, and .made it subject, not to the civil authority, but to the ' -“’military authorities-of the United States.”
■ It is true that no organized rebellion now exists there, and. ‘the courts of'.the United States now exercise jurisdiction1 over the people of that province. , Bút this is no test of the. State’s .being-in the Union; Dacotah is no State, and yet the. courts of the'United States administer-justice there as théy do in Texas; The Indian tribes, who are governed by mil-ifary force, cannot claim to be States of the Unión. Wherein does the cónd-itión of Texas differ-from -theirs? '
*739 Now, by assuming or admitting as a fact the present status of Texas as.a State not in.the Union politically, I beg leave to protest against any chafge of inconsistency as to judicial opinion^ heretofore expressed as a member of this court, or silently assented to. I do not consider myself bound to express any opinion judicially as to the constitutional right of Texas to exercise the rights and privileges of a' State of this Union, or the power of Congress to govern her as a conquered province, to subject her to' military domination, and keep her in pupilage. I can only submit to the fact as decided by the political position of the government; and I am not disposed to join in any essay to prove Texas to -be a State of the Union, when Congress have decided that she is not. It is' a question of fact, I repeat, and of fact only. Politically, Texas is not d State in this Unionr Whether rightfully out of it or not is a question not before the court.
, But conceding now the fact to be as judicially assumed by my brethren, the next question is, whether she has a right to repudiate her'contracts? Before proceeding to answer this question, we must,notice a fact in this case that was forgotten in the argument. I mean that the, United States are no party.to this suit, and refusing to pay‘the bonds because the money paid would .be'used to advance the interests of the rebellion. It is a matter of utter insignificance to the government of the United States to whom she makes the payment of these bonds. They are payable to the bearer. The government is not bound to -inquire'into the bond jides of the holder, nor whether the Slate of Taxes has parted with the bonds wisely or foolishly. And although by the Iiceonstruetion Acts she is required to repudiate all debts contracted for the purposes of the rebellion, this does not annul all acts of the State government during the rebellion, or contracts for other pmrposes, nor authorize the State to repudiate them.
Now, whether we assume the State of Texas to be judicially in the Union (though actually out of it) or not, it wili not alter-the case. The contest now is between the State of Texas and her own citizens. She seeks to annul a con *740 tract with the respondents, based on the allegation that there was no authority in' Texas competent to enter into an agreement during the rebellion. Having relied upon one fiction, namely,.that she is a State in the Union, she now relies upon a second-one,, which she wishes this court to adopt, that she was not a State at-all during the five>years that she was in rebellion. She now sets up the plea of insanity,, and asks the court to-treat all her acts, made during the disease as void.
We have had some very/astute logic to prove that judicially she was not a State at all, although governed by her own legislature and executive as “a distinct political body.”
.The ordinance of secession was adopted by the convention1 on the 18th of February, 1861; submitted to a vote.of the people, and ratified by an'overwhelming majority. I admit that this was a. very ill-advised measure. Still it was the sovereign act of a sovereign State, and the verdict on the ..trial of this question, “by battle,”* as to her right,to secede, has been against her. But that verdict did not séttle any .question not involved in the case. It did not settle the question-of her right to plead insanity and set aside all her contracts, made during the pending of the trial, with her own citizens,, for food, clothing, or medicines. The same “ organized political body,” exercising the sovereign power of-the State, which required the indorsement of these bonds by the governor, also passed the laws authorizing the disposal of them without such indorsement. She cannot, like the. chameleon, assume the color of the object- to which she adheres, and ask this court to involve itself in. the contradictory positions, that she is a State in the Union and was never o.ut of it, and yet not a'State at all for four years, during which she acted and claims to be “ an organized political'body,” exercising all the powers and functions .of an independent sovereign State. Whether a State de facto ■ or de jure, she is estopped from denying her identity in disputes with her own citizens. If they have not fulfilled their *741 contract, she can have her legal remedy for the breach of it in her own courts.
But the case of Hardenberg differs from that of the other defendants. He purchased the bonds in open market, bond fide, and for a full consideration. Now, it is to be observed that these bonds'are payable to bearer, and that this court is appealed to as a court of equity. The argument to justify a decree in favor of the commonwealth of Texas as against Hardenberg, is simply this: these bonds, though payable to bearer, are redeemable, fourteen years from date. The government has exercised her privilege of paying the interest for a term without redeeming the principal, which gives an additional value to the bonds. Ergo, the bonds are dishonored; Ergo, the. former owner has a right, to resume the possession of them, and reclaim them from a bond fide owner by á decree of a court of equity.
This is the legal argument, when put in the form of a logical, sorites, by which Texas invoked our aid to assist her in the pei'petration of this great wrong.
A court of chancery is said' to be a court of conscience; and however astute may be the argument introduced to defend' this decree, I can only 'say that neither my reason nor my conscience can give assent to it.

 2 Cranch, 452.

 Prize Cases, 2 Black, 673.